1 | Tracy Thompson (SBN 88173)
   *tt@millerlawgroup.com*
2 | Adam J. Tullman (SBN 235694)
   *ajt@millerlawgroup.com*
3 | MILLER LAW GROUP
   A Professional Corporation
4 | 111 Sutter Street, Suite 700
   San Francisco, CA 94104
5 | Tel. (415) 464-4300
   Fax (415) 464-4336
6 |
   Attorneys for Defendant
7 | RADIOSHACK CORPORATION

ORIGINAL
FILED

JUN 23 2011

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

LB

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANK ALLEN, | **C V 11 3110** |
| | Case No.: |
| Plaintiff, | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (Diversity)** |
| v. | |
| RADIO SHACK CORPORATION, DONNA O'CAMPO and Does 1 through 100, | Complaint filed:  May 20, 2011 |
| Defendants. | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

        PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant RADIOSHACK CORPORATION ("Defendant" or "RadioShack") hereby removes to this Court the state court action described below.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

## I.  INTRODUCTION

This case is hereby removed from state court to federal court because at the time the Complaint was filed, and at the present time, complete diversity of citizenship exists between the parties to this action and the alleged amount in controversy exceeds $75,000. Accordingly, this Court has original jurisdiction under 28 U.S.C. § 1332(a).

## II.  THE STATE COURT ACTION

On May 20, 2011, Plaintiff Frank Allen filed a Complaint for Damages against Defendant RADIOSHACK CORPORATION and DONNA OCAMPO in the Superior Court of the State of California, County of San Francisco, entitled *FRANK ALLEN v. RADIO SHACK CORPORATION, DONNA O'CAMPO* and Does 1 through 100, Case No. CGC-11-511136. The Complaint alleges six causes of action against Defendants including: (1) Disparate Treatment in Violation of FEHA Based on Race and National Original; (2) Retaliation in Violation of FEHA; (3) Age Discrimination in Violation of FEHA; (4) Harassment In Violation of FEHA (Hostile Work Environment); (5) Wrongful Termination in Violation of Public Policy; and (6) Intentional Infliction of Emotional Distress.  A true and correct copy of the Complaint is attached hereto as **Exhibit A.**

On June 22, 2011, Defendant filed and served its Answer to Complaint in state court, a true and correct copy of which is attached as **Exhibit B**.

In accordance with 28 U.S.C. § 1446(a), attached hereto as **Exhibit C** and incorporated by reference are copies of the papers originally served on Defendant as well as copies of all other documents maintained on the state court's docket.

1    Pursuant to 28 U.S.C. § 1146(d), Defendant shall give Plaintiff, through his
2  attorney of record, written notice of the filing of this Notice of Removal, and shall file written
3  notice of the filing of this Notice of Removal with the Clerk of the Superior Court of the
4  County of San Francisco, attaching thereto a copy of this Notice of Removal.  A true and
5  correct copy of the Notice of Removal of Action to be filed with the state court is attached as
6  **Exhibit D**.

7

8    No further proceedings have been had, and fewer than thirty (30) days have
9  elapsed since this action became removable to this Court.  In accordance with 28 U.S.C. §
10  1446(b), this Notice is timely filed with this Court.

11

12                  **III.  JOINDER**
13

14    Defendant is not aware of any other defendant having been served with a copy
15  of the Complaint.

16

17                **IV.  DIVERSITY JURISDICTION**
18

19    The state court action is a civil action over which this Court has original
20  jurisdiction under 28 U.S.C. § 1332 based on diversity jurisdiction.  The state court action is
21  properly removable to this Court in that it is a civil action between citizens of different states
22  in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and
23  costs, as explained below.

24

25  **A.    The Parties' Citizenship**

26

27    There is complete diversity of citizenship because the operative parties,
28  Plaintiff, Defendant RadioShack Corporation, and Defendant Donna Ocampo are citizens of

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

different states. The only other defendants identified in Plaintiff's Complaint are fictitious parties identified as "DOES I-100." The citizenship of these defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a).

As of May 20, 2011, when the Complaint was filed, Plaintiff was a citizen and resident of the State of California. *See* Complaint, ¶ 1 (**Exhibit A**).

As of May 20, 2011, when the Complaint was filed, and at the present time, Defendant RadioShack Corporation was and is a Delaware Corporation with its principal place of business in Fort Worth, Texas. Declaration of Kim Bullard in Support of Defendant's Notice of Removal ("Bullard Decl."), ¶ 2. Accordingly, RadioShack Corporation was and is a citizen of Delaware and Texas. 28 U.S.C. § 1332(c)(1).

As of May 20, 2011, when the Complaint was filed, and at the present time, Defendant Donna Ocampo was and is a resident of the state of Colorado. Declaration of Donna Ocampo in Support of Defendant's Notice of Removal ("Ocampo Decl.") ¶¶ 2-3. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd,.* 704 F2d 1088, 1090 (9th Cir. 1983). Domicile is determined at the time the lawsuit was filed, not when the cause of action arises. *LeBlanc v. Cleveland*, 248 F3d 95, 100 (2nd Cir. 2001). A person may establish his or her domicile by establishing (i) a fixed habitation or abode in a place (ii) with intent to remain indefinitely. *Lew v. Moss*, 797 F2d 747, 749-750 (9th Cir. 1986); *see also, Kanter v. Warner–Lambert Co.,* 265 F3d 853, 857 (9th Cir. 2001). Donna Ocampo moved to Colorado, where she currently resides, in April, 2011 before this action was filed. It is her intent to remain there indefinitely. Ocampo Decl. ¶ 2-3.

As of May 20, 2011, when the Complaint was filed, and at the present time, no defendant was a citizen or resident of California, and complete diversity exists.

NOTICE OF REMOVAL OF ACTION UNDER U.S.C. § 1441(b) (Diversity)
Case No.:

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

1 || **B.     The Amount in Controversy**

2

3          The amount in controversy between the parties exceeds the minimum sum of

4   $75,000 set forth in 28 U.S.C. § 1332(a), exclusive of interest and costs.   In this lawsuit,

5   Plaintiff is seeking recovery of lost wages in the form of back pay and front pay, damages for

6   alleged emotional distress, and medical expenses as well as attorney's fees and costs and

7   punitive damages.   Complaint, at ¶¶ 61-65, 75-79, 86-88, 90-92, 100, 101, 103-105, 115,

8   116, 118, Prayer for Relief, page 25. (**Exhibit A**).

9

10         Plaintiff was terminated in April, 2010.   Complaint at ¶ 37.   In the first four

11  months of 2010 he earned approximately $25,000.   Bullard Decl. at ¶ 3.   That yields an

12  average of $6,250 per month.   Plaintiff has been terminated from work at RadioShack for

13  approximately 14 months already.   Thus we can safely assume that he will seek at least

14  $87,500 in back pay.   That alone meets the jurisdictional requirement.

15

16         Punitive damages are a part of the amount in controversy in a civil action

17  where they are recoverable as a matter of law.   *See, Simmons v. PCR Tech.*, 209 F. Supp.

18  2d 1029, 1033 (N.D. Cal. 2002); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.

19  2001).   FEHA discrimination cases may result in awards of punitive damages which meet

20  the jurisdictional threshold.   *See, e.g., Roby v. McKesson*, 47 Cal. 4th 686 (2009).

21

22         Plaintiff's claim for emotional distress damages is also part of the amount in

23  controversy.   *See Simmons*, 209 F. Supp. 2d at 1034 ("emotional distress damages in a

24  successful employment discrimination case may be substantial").

25

26         Finally, Plaintiff seeks recovery of attorneys' fees.   Complaint, at ¶¶ 65, 79,

27  102, Prayer for Relief, page 25. (**Exhibit A**).   Attorneys' fees are provided to a prevailing

28  plaintiff under the FEHA.   Cal. Govt. Code § 12965(b).   Courts should include in their

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

1   amount in controversy calculation damages and attorneys' fees that, although not yet

2   accrued, are reasonable to anticipate.  *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d

3   1004, 1009 (N.D. Cal. 2002); *see also Simmons*, 209 F. Supp. 2d at 1035.

4

5        Accordingly, the amount in controversy exceeds the minimum sum of $75,000

6   set forth in 28 U.S.C. § 1332(a), exclusive of interest and costs.

7

8                              **V.  VENUE**

9

10       The Superior Court of the State of California for the County of San Francisco is

11   located within the Northern District of California.   Accordingly, this action is properly

12   removed to this Court.  28 U.S.C. § 84(a); Rule 3-2(d) of the Local Rules for the United

13   States District Court for the Northern District of California.

14

15       THEREFORE, Defendant gives notice that the above action, which was

16   pending in the Superior Court of the State of California, County of San Francisco, is hereby

17   removed to this Court.

18

19

20   Dated:  June 20, 2011                    MILLER LAW GROUP
                                              A Professional Corporation
21

22

23                                           By: _____

24                                              Adam J. Tullman
                                                Attorneys for Defendant RADIOSHACK
25                                              CORPORATION

26

27

28   4816-1677-9785, v. 1

                                        6
      _____
      **NOTICE OF REMOVAL OF ACTION UNDER U.S.C. § 1441(b) (Diversity)**
                              **Case No.:**

**EXHIBIT A**

1    **Angela M. Alioto, (SBN 130328)**
     **Angela Mia Veronese, (SBN 269942)**
2    **LAW OFFICES OF JOSEPH L. ALIOTO**
     **AND ANGELA ALIOTO**
3    700 Montgomery Street
     San Francisco, CA 94111-2104
4    Telephone: (415) 434-8700
     Facsimile: (415) 438-4638
5

6    Attorneys for Plaintiff Frank Allen

**SUMMONS ISSUED**
**F I L E D**
San Francisco County Superior Court

MAY 20 2011

CLERK OF THE COURT
BY: _____ Deputy Clerk
**P. NATT**

7            **SUPERIOR COURT OF CALIFORNIA**

8              **SAN FRANCISCO COUNTY**

9               **UNLIMITED JURISDICTION**

10               **C G C - 1 1 - 5 1 1 1 3 6**

11    Frank Allen,

12

13      Plaintiff,

14    VS.

15    Radio Shack Corporation, Donna
16    O'Campo and Does 1 through 100

17    Defendants.

18

19

20

21

22    ═══════════════════════

)
) CASE NO.
)
) **COMPLAINT FOR DAMAGES FOR:**
)
) 1.   Disparate Treatment Based on
)      Race/National Origin (FEHA);
)
) 2.   Retaliation (FEHA);
)
) 3.   Discrimination Based on Age
)
) 4.   Hostile Work Environment
)      (Harassment) (FEHA);
)
) 5.   Wrongful Termination in
)      Violation of Public Policy
)
) 6.   Intentional Infliction of Emotional
)      Distress
)
) **JURY TRIAL DEMANDED**
)

23                **BY FAX**

24

25

26       Plaintiff Frank Allen complains against Defendants Radio Shack Corporation,

27    Donna O'Campo and Does 1-100, and demands a trial by jury of all issues and for

28    causes of alleged actions:

## PARTIES AND JURISDICTION

1. At the pertinent times mentioned in this complaint, Plaintiff Frank Allen is a resident of the State of California, County of Alameda.

2. Defendant Radio Shack Corporation is an employer doing business in the State of California employing approximately 35,000+ employees. Radio Shack Corporation has 4480 company stores in the United States and Mexico, 1240 dealer outlets worldwide and over 940 wireless phone kiosks.

3. RadioShack Corporation is a multifaceted, multibillion dollar company, and one of the nation's largest retailers of consumer electronics.

4. Defendant Donna O'Campo was Defendant's regional manager at the time all acts occurred herein.

5. At all the pertinent times mentioned in this complaint, Defendants acted with the intent to cause a tortuous effect within the State of California, to the Plaintiff, within the State of California.

6. Defendants are directly liable for the harassing conduct of their supervisors, managers, division heads and other employees and agents.

7. Defendants are directly liable for the discriminatory and retaliatory conduct of their division heads, managers, supervisors and employees agents.

8. Plaintiffs are ignorant of the true names or capacities of the defendants sued here under the fictitious names DOES 1 through DOES 100. Plaintiffs are informed and believe that each of DOE defendants was responsible in some manner for the occurrences and injuries alleged in this Complaint.

2

9. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of each and every other defendant.

10. All acts complained of herein occurred in the City and County of san Francisco, California.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff Frank Allen has exhausted all applicable administrative remedies. Plaintiff Allen has received two Right to Sue letters from the California Department of Fair Employment and Housing. The right to sue letter against Defendant RadioShack Corporation is dated November 17, 2010 and the right to sue against Defendant Donna O'Campo is dated February 23, 2011.

### STATEMENT OF FACTS

12. Plaintiff Frank Allen is 56 years old African American male

13. Prior to Plaintiff's employment with the Defendant, Plaintiff served as a Marine Lance Corporal in the United Marine Corp.

14. Fourteen years ago, in December 1997 Plaintiff Allen was hired by Defendant Radio Shack as an Assistant Manager. Plaintiff worked at the Van Ness and Market location.

16. On or about March 1998, Plaintiff was promoted to Manager and was transferred to Store 3830 at 938 Market Street, where he has worked for the last 12 years.

17. Store 3830 is located in the Tenderloin district of San Francisco. Plaintiff loved his job and the store location. He built up this location's sales from a $600,000 store to a $1,400,000 store, due to his incredible ability, talent and rare form of salesmanship. Plaintiff was well known, liked and respected in the community.

3

18. For over 13 years Plaintiff had a stellar performance review. Over the years plaintiff earned several awards and bonus' based on his performance. For the year 2009, Plaintiff's daily sales were so high at his store that he was awarded the # 3 store manager of the entire Northwest District, out of about 1500 managers. Three out of fifteen hundred managers.

19. Over the past five years, Plaintiff earned an average of $60,000 thousand dollars a year.

20. On or about, December of 2009, Greg Pappas the area Vice-President entered the store with defendant Donna O'Campo, the Human Resources Manager and the President of Loss Prevention. Mr. Pappas was immediately confrontational with the plaintiff. He wanted to know, among other things,   how long plaintiff had been employed by Radio Shack. After plaintiff answered him, Pappas looked at him from head to toe and told Plaintiff, **"you may have a year left with Radio Shack. You have been in charge of the whole store for awhile. You MAY have another year".** Plaintiff was stunned by this threat of termination. For 13 years Plaintiff was a stellar employee, until Defendant's new management decided he did not "fit the right image".

21. Plaintiff immediately made a formal complaint about Mr. Pappas' comments and behavior, to his then District Manager Hanni. Plaintiff also made a complaint about Pappas at the next manager's meeting, where district managers Hanni and Defendant O' Campo where present.  There were several managers at this meeting from all over California.

22. A month later, in January of 2010, Defendant Donna O' Campo was named as Plaintiff's new District Manager. She replaced District manager Hanni. Defendant O'Campo started working as District manager in or around mid-February 2010.

23. On March 23rd, 2010, about one month after becoming District Manager Defendant O'Campo, out of the blue, came into the store and wrote plaintiff up for "cash shortages" that allegedly happened a YEAR prior, under the previous

4

1    District Manager Hanni . To be written up for the first time in his 13 year career

2    for what basically is a criminal act, stunned the plaintiff and caused his emotional

3    distress.

4    Plaintiff Allen had NEVER been written up in the entire 13 years as an

5    employee of Defendant Radio Shack Corporation.

6    24.  On March 29th, 2010, Defendant O' Campo called Plaintiff and told him+ that she

7    was coming down for lockinpegs. Lockinpegs are pegs used to secure

8    merchandise to display.  Defendant O'Campo told Plaintiff Allen, *"you don't fit*

9    *the image that Radio Shack wants. You don't have the right people in this store.*

10    *You need to upgrade your employees."* Defendants were determined to terminate

11    Plaintiff because he does not  "fit the image" that Radio Shack wanted.

12    25. Plaintiff was stunned by this comment and knew that the 'image' she was talking

13    about was based on his race and age and the race of his employees.

14    26. Plaintiff is a 56 year old African American. **His employee staff at that time**

15    **consisted of three African Americans, two Hispanics and one Caucasian.**

16    27. Defendant O' Campo told Plaintiff to set up interviews for her and she would

17    come in and interview applicants for the new staff that he, plaintiff was suppose to

18    terminate because **"they don't fit the image"**. Once the person was "acceptable" to

19    defendant O' Campo the present employees would be fired.  **Defendant O"Campo**

20    **was directing Plaintiff to do an illegal act, ie getting rid of the African American**

21    **and Hispanic employees.**

22    28. Plaintiff was very concerned and defended himself and his staff by reminding

23    Defendant O' Campo his excellent staff was excellent and of the fact that his store

24    is one of the best selling stores in the West.

25    29. Defendant O'Campo repeated that plaintiff and his staff "did not fit the image"

26    that Defendants now wanted.

27    30. Defendant  O'Campo  was referring to plaintiff's  race and the race of the

28    employees.

5

1    **31.** Six days later on April 4th, 2010, Ms. O' Campo returned to the store and told

2      plaintiff **"if you don't get rid of your people I will get rid of you".**

3    32. Nine days later, on the evening April 13th, 2010, Plaintiff had left the store to make

4      a bank deposit and then went home as he did daily. Plaintiff had left $120 in his

5      desk drawer as per custom and practice should a customer need change. When

6      plaintiff left the store that evening, the drawer was locked. After plaintiff left,

7      Defendant O' Campo returned to the store. Rosetta, an employee of Defendant

8      Radio Shack, who had a key to the drawer, had just sold some computers and had

9      opened the cash drawer to make some change.

10    33. Defendant O'Campo bagan going through plaintiff's desk and became angry that

11      the cash drawer was not locked. Rosetta, who was very distressed, called her boss,

12      the Plaintiff and informed him that defendant O'Campo was going through his

13      desk.

14    34. The next day Plaintiff called Defendant O'Campo. Defendant O' Campo accused

15      Plaintiff of leaving the cash drawer open. Rosetta had told O'Campo that the she

16      had unlocked the drawer because she had just opened the drawer to make change

17      for a purchase.

18    35. Plaintiff told Defendant O' Campo that he locked the drawer when he left the store

19      the day before and that Rosetta had a key if she needed to get change for a

20      customer. He again explained that when he left the store the previous evening at

21      5:30pm the drawer was locked. Defendant O' Campo told Plaintiff that she would

22      check with her boss and let him know what the next step would be.

23    36. Plaintiff and defendant O'Campo discussed getting a lock for the door going to the

24      office. O'campo said she would get a lock. Plaintiff then emailed O'Campo

25      reminding her of the lock for the door, but she never replied and did not purchase

26      a lock for the door.

27    **37.** Two weeks later, on April 27th, 2010, Defendant O' Campo returned to the store

28      with the manager of loss prevention. Defendant O' Campo stated to Plaintiff **"give**

6

1  me your keys, we are going to let you go for not taking care of Radio Shack

2  merchandise".

3  38. Plaintiff Allen was stunned. He replied, "I have the best inventory in the

4  district, what is really going on here, it's not about the merchandise? Why are

5  you really firing me?" Defendant O' Campo stated, "sue me".

6  39. Plaintiff was asked to leave the store he had successfully managed for 12 years.

7  40. Plaintiff asked Defendant O'Campo for something in writing stating the reason for

8  his termination. Defendant O'Campo told him he would be would be receiving

9  something in the mail.

10  41. To this day, Plaintiff Allen has not received a termination letter or any

11  correspondence from defendant Radio Shack after 13 years of loyal and stellar

12  service.

13  42. The next day, Plaintiff Allen called Defendant's Human Resources in San Ramon

14  and told the lady that Radio Shack terminated me based "on who I am". Human

15  Resources told Plaintiff that they would stand by the managers decision.

16  43. Plaintiff then called Fort Worth Texas and asked for Human resources so that he

17  could make his complaint, and they referred him back to San Ramon.

18  44. Plaintiff did" not fit "the new Radio Shack non African American image and as a

19  result he was terminated. A non African American twenty three year old replaced

20  him. In fact, all of the employees were replaced with non-African American s and

21  non-Hispanic employees under 40 years old.

22
23  45. For the year 2009, Plaintiff was voted manager of the month in the North West

24  District for 11 out of the 12 months.

25  46. A month or so later two African American employees were terminated, the one

26  Hispanic employee was terminated. The ONLY employee who was NOT

27  terminated was the Caucasian employee. He is still there.

28

7

1   47. After 13 years of loyal and stellar service, plaintiff was replaced with a 23 year old

2      non-African American manager. The 2 other African Americans employees were

3      replaced with non-African American employees in their twenties.

4   48. On April 29, 2010 Plaintiff was contacted by a Radio Shack Manager who informed

5      him that the Manager who replaced Plaintiff knew she would be taking Plaintiff's

6      job a month prior to Plaintiff's termination.

7   49. One month prior to Plaintiff's termination, Defendants already had a 23 year old

8      non-African American employee who fit the new Radio shack image, ready and

9      waiting to replace Plaintiff.

**FIRST CAUSE OF ACTION**

**Disparate Treatment in Violation of FEHA Based on RACE and National Origin**
**Cal. Govt. Code Sections 12900 et. seq.**
**(As to All Defendants)**

50. Plaintiff realleges and incorporates paragraphs 1 through 49  with the same force

      and effect as if fully pleaded at length herein.

51. Jurisdiction in this court  is invoked pursuant to **California Government Code § §**

      **12900, 12921, 12926, 12940** and **12965**, specifically **Sections 12940(a), 12941** and

      **12921(a)** [Collectively referred to as "**FEHA**"]. Defendants are not exempted from

      the statutes cited in this paragraph by any local, state or federal laws.

52. Defendants regularly employ more than five employees, and are subject to suit

      under **FEHA** for conduct prohibited thereby. **Cal. Govt. Code Section 12940**

      **(j)(4)(A).**

53. The Plaintiff herein is a member of a class protected by **FEHA**. Plaintiff Frank

      Allen is African American.  Plaintiff was mistreated based on his race and national

      origin, **including but not limited being subject to being written up and**

8

terminated because he "did not fit the image' that Radio Shack now wanted for their stores. Plaintiff was wrongfully accused of committing a crime. Plaintiff was treated worse than the non African employees.

54. At all times herein relevant, the Plaintiff's job performance was always satisfactory and was usually excellent.

55. Plaintiff has been subjected to discrimination and disparate treatment which treatment has included but is not limited to the following forms:

   (A) Plaintiff was wrongfully written up;

   (B) Plaintiff was threatened by the vice President and the regional manager;

   (C) Plaintiff was wrongfully accused of cash shortages and not protecting property.

   (D) Defendants created and maintained an intolerable and hostile work environment for Plaintiff, including wrongful write-ups, confrontations by the wrong doers, criminal accusations and condoning the discrimination;

   (E) Defendants disproportionately scrutinized Plaintiff's conduct;

   ( F) Defendants subjected Plaintiff to less favorable terms and conditions of his employment based on his age and race and the race of his staff;

   (G) Defendants threatened Plaintiff that if he did not "upgrade" his employees he would be terminated;

   (H) Defendants created and condoned a hostile work environment leading to Plaintiff's wrongful termination.

9

56. The discriminatory acts described pursuant to the preceding paragraphs are part of a longstanding, deep-rooted policy and/or practice by the management of Defendants to discriminate and retaliate against African employees.

57. Defendants at all times relevant herein disparately applied its alleged rules to the Plaintiff.

58. The managers of Defendants were either aware of the discrimination described herein and took no action to prevent it and/or themselves actively participated in the discrimination. Plaintiff petitioned the management of the Defendants to stop such discriminatory practices. Because such petitions were ignored, the Plaintiff was required to file an administrative complaint with the Department of Fair Employment and Housing, and to initiate the current lawsuit.

59. This action is not preempted by the California Workers' Compensation Act because discrimination is not a risk or condition of employment.

60. The acts complained of herein were either approved, condoned or taken by one or more managing agents of Defendants, each of whom had the authority to make corporate policy and/or to direct a substantial portion of the Defendants' business.

61. Because of the aforesaid acts of Defendants, Plaintiff suffered, and continues to suffer losses of wages/salary, commissions, renewals, bonuses and other employee compensation in an amount that is currently un-ascertained. Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained, or upon proof at the time of trial.

10

62. Plaintiff was held up to great derision and embarrassment with fellow workers, friends, members of the community and family, and have suffered emotional distress because the Defendants demonstrated to Plaintiff that they would not recognize nor accept him as an employee solely because of Plaintiff's race and national origin. Plaintiff is informed and believes that the Defendants and their management acted deliberately for the purposes of injuring him. Defendants, by and through the named Defendants' agents and employees, further acted intentionally and unreasonably because they knew and/or should have known that their conduct was likely to result in severe mental distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at time of trial.

63. Because of the wrongful acts of Defendants as herein above alleged, Plaintiff has been and will in the future be required to employ physicians and surgeons to examine, treat and care for him and will incur additional medical expenses in an amount to be proven at the time of trial.

64. In doing the acts set forth above, Defendants acted as herein alleged with a conscious disregard of Plaintiff right to be free from discrimination and/or disparate treatment. Defendant acted, as alleged, with the malicious intention of depriving the Plaintiff of employment opportunities and benefits that must be accorded to all employees. Defendants have retained and promoted vicious employees and managers known by it to be prejudiced against Americans of African descent. This conduct by Defendants was, and is, despicable, cruel and

11

oppressive. Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at trial.

65. In bringing this action, Plaintiff has been required to retain the services of counsel. Pursuant to **Government Code § 12965(b)**, they are entitled to an award of attorney fees.

**WHEREFORE,** Plaintiffs pray for judgment as more fully set forth herein below.

## SECOND CAUSE OF ACTION

Retaliation in Violation of FEHA
Cal. Govt. Code Sections 12900 et. seq.
**(As to Defendants RadioShack Corporation)**

66. Plaintiff realleges and incorporates all of the facts set forth in paragraphs 1 through 49 with the same force and effect as if fully pleaded at length herein.

67. Jurisdiction in this court is invoked pursuant to **California Government Code § §** **12900, 12921, 12926, 12940** and **12965**, specifically **Section 12940(h** [Collectively referred to as **"FEHA"**].

68. Defendants are not exempted from the statutes cited in this paragraph by any local, state or federal laws.

69. Defendants regularly employ more than five employees, and are subject to suit under FEHA for conduct prohibited thereby.

70. At all times herein relevant, Plaintiff's job performance was always satisfactory and was usually excellent.

71. This is an action for damages based on discrimination and harassment against Plaintiff for having opposed employment practices made unlawful pursuant to the

12

California FAIR EMPLOYMENT AND HOUSING ACT ["FEHA "], i.e., Cal. Gov. Code § § 12900, 12921, 12926, 12940 and 12965, specifically Section 12940(h).

72. Plaintiff has engaged in activity protected by FEHA by repeatedly and persistently opposing acts by Defendant that violate the FEHA.

73. Specifically, Plaintiff has opposed acts he reasonably believes to be discrimination and harassment based upon race. For example, Plaintiff was threatened and told to terminate his African American and Hispanic employees because they "did not fit the image' defendants wanted. Plaintiff was told he needed to "upgrade" his staff. Plaintiff was threatened that if he did not do this, he would be terminated. Plaintiff, as the Store Manager felt he had a superb and competent staff, which was reflected by his store's success.   Soon after, plaintiff was retaliated against and terminated. As a direct and proximate result of such opposition, the Defendants have taken adverse actions against the Plaintiff that have had a significant impact on his employment status, up to and including his termination.

74. Plaintiff is informed and believes and thereon alleges that this cause of action is not preempted by the California Workers' Compensation Act on the grounds that retaliation for opposing unlawful discrimination or harassment is not a risk or condition of his employment.

75. As a result of the adverse employment actions by Defendants, including, including but not limited to constructive termination, Plaintiff has, and continue to, suffer a loss of wages/salary, benefits, and other forms of compensation in an amount which is currently unascertained.  As a result of the acts of Defendants, the

13

Plaintiff herein also faces a substantial diminution of his future earning capacity in an amount which is currently unascertained. Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when he has been ascertained or upon proof at the time of trial.

76. As a result of the adverse employment actions by Defendants, the Plaintiff has been held up to great derision and embarrassment with his fellow workers, customers, friends, members of the community and families, and has suffered emotional distress because Defendants have demonstrated to him that they would not tolerate employees complaining of the illegal employment discrimination and harassment set forth above.  Plaintiff is informed and believes that the Defendants and its employees, agents and management acted deliberately for the purposes of injuring him as alleged above. Defendants , by and through their employees, agents and  management, further acted intentionally and unreasonably because they knew and/or should have known that their conduct was likely to result in severe mental distress to the Plaintiff. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at time of trial.

77. Because of the wrongful acts of Defendants as herein above alleged, Plaintiff has been and will in the future be required to employ physicians and surgeons to examine, treat and care for them and will incur additional medical expenses in an amount to be proven at the time of trial.

78. In doing the acts as described above, Defendants, by and through their employees, agents and  management knowingly and intentionally retaliated against those

14

among its' employees, specifically the Plaintiff, who protested the discrimination and harassment in employment set forth herein.   The managing agents of Defendants have made conscious decisions to retaliate against the Plaintiff as a means of making "an example" of him, in the hopes of deterring other employees from coming forward to oppose such illegal activity.  In addition, said managing agents have knowingly retained and protected vicious employees, including agents. This conduct by Defendant was, and is, despicable, cruel and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at trial.

79. In bringing this action, Plaintiffs have been required to retain the services of counsel. Pursuant to **Government Code § 12965(b)**, they are entitled to an award of attorney fees.

**WHEREFORE**, Plaintiff prays for judgment as more fully set forth herein below

### THIRD CAUSE OF ACTION

Age Discrimination in Violation of FEHA
Cal. Govt. Code Sections 12900 et. seq.
(As to All Defendants)

80. Plaintiff incorporates by reference all of the facts set forth in paragraphs 1 through 49 with the same force and effect as if fully pleaded at length herein

81. Jurisdiction in this court  is invoked pursuant to **California Government Code § § 12900, 12921, 12926, 12940  and 12965** [Collectively referred to  as  "FEHA"]. Defendant is not exempted from the statutes cited in this paragraph by  any local, stat or federal laws.

15

82.     Defendant regularly employs more than five employees, and is subject to suit under **FEHA** for conduct prohibited thereby.

83. The plaintiff is a member of a class protected by **FEHA**. He is 56 years of age.

84. At all times herein relevant, Plaintiff's job performance was always satisfactory and was usually excellent.

85. Defendants terminated the employment of Plaintiff as a result of his Age. For example, after Plaintiff was asked by a Vice president, how long he had been at Radio Shack, and after looking at plaintiff from Head to toe, told plaintiff he might "have another Year with Radio Shack". In fact, a couple months later, after 13 years of loyal service, Plaintiff was terminated and replaced by a non-African American 23 year old.

86. As a result of the aforesaid discriminatory acts, Plaintiff has suffered and is continuing to suffer a loss of wages/salary, benefits and other employee compensation in an amount which is currently un-ascertained. Plaintiff faces a substantial diminution of her future earning capacity in an amount which is currently un-ascertained. Plaintiff will request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained, or upon proof at the time of trial.

87. As a result of the aforesaid acts of discrimination, Plaintiff has been held up to great derision and embarrassment with fellow workers, friends, members of the community and family, and has continued to suffer emotional distress. Plaintiff is

16

1     informed and believes that the defendant and its management acted deliberately

2     for the purposes of injuring her.

3

4   88.     Defendant, by and through its managing agents and employees, further acted

5     intentionally and unreasonably because they knew and/or should have known

6     that their conduct was likely to result in additional, severe mental distress.

7

8     Plaintiff therefore seeks damages for such emotional distress in an amount to be

9     proven at time of trial.

10   89.     Plaintiff is informed and believes and thereon allege that this cause of action is

11     not preempted by the California Workers' Compensation Act on the grounds that

12     employment discrimination is not a risk or condition of her employment.

13

14   90.     Because of the wrongful acts of Defendant as herein above alleged, Plaintiff has

15     been and/or will in the future be required to employ physicians and mental

16     health care professionals to examine, treat and care for her and will incur

17     additional medical expenses in an amount to be proven at the time of trial.

18

19   91.     In doing the acts set forth above, Defendant and its managing agents acted as

20     herein alleged with a conscious disregard of Plaintiff's right to be free from

21     discrimination based on age. Defendant acted, as alleged, with the malicious

22     intention of depriving Plaintiff of employment opportunities and benefits that

23

24     must be accorded to all employees regardless of their age. Defendant has retained,

25     promoted and coddled employees and managers known by it to be vicious in that

26     they are prejudiced against older employees. This conduct by Defendant was, and

27

28

1    is, despicable, cruel and oppressive. The Plaintiff is therefore entitled to an award

2    of punitive damages in an amount to be proven at trial.

3    92.    In bringing this action, Plaintiff has been required to retain the services of

4

5    counsel. Pursuant to **California Government Code § 12965(b)**, she is entitled to

6    and hereby requests an award of attorney fees and costs of suit.

7    WHEREFORE, Plaintiff prays for judgment as more fully set forth herein below.

8                        **FOURTH CAUSE OF ACTION**

9                        **Harassment In Violation of FEHA**
10                       **(Hostile Work Environment)**
                         Cal. Govt. Code Sections 12900 et. seq.
11                       **(As to all Defendants )**

12   93. Plaintiff realleges and incorporate paragraphs 1 through 49 with the same force

13       and effect as if fully pleaded at length herein

14   94. Jurisdiction in this court is invoked pursuant to the **FAIR EMPLOYMENT AND**

15       **HOUSING ACT ["FEHA "], i.e.,Gov.Code § § 12900, 12921, 12926, 12940  and**

16       **12965, specifically Section 12940 (j).**

17   95. Defendants are comprised of entities and/or individuals with an obligation under

18       the law to assure an environment in which its employees can work freely without

19       fear of harassment.

20   96. Defendants have allowed, condoned, enabled and refused to prevent the

21       harassment of Plaintiff, by themselves, agents, managerial, and other employees.

22       Said harassment included, but is not limited to, the following:

23              (A)    Making false accusations against the plaintiff:

24              (B)    Falsely accusing plaintiff of criminal acts

25              (C)    Threatening Plaintiff with termination when he would not engage

26                     in racial discrimination;

27              (D)    Verbally threatening Plaintiff with threat of termination;

28

                                        18

(E)     Ongoing excessive and disproportionate scrutiny of Plaintiff conduct;

(F)     Defendants at all times creating and condoning a hostile work environment for Plaintiff;

(G)     Defendants at all times creating and condoning an intolerable work environment for Plaintiff;

(H)     Public humiliation of  Plaintiffs  by Defendants;

(I)     Racially motivated disrespect toward Plaintiff; and

(J)     Wrongfully Terminating Plaintiff and replacing plaintiff with 23 year old non-African American.

97. The harassment described in the preceding  paragraphs and otherwise described in detail herein was and is so severe and pervasive that the working conditions of the Plaintiff was altered into a hostile and unsafe work environment.

98. The harassment described in the preceding  paragraph and otherwise described in detail herein was and is so severe and pervasive that the working conditions of the Plaintiff constituted "harassment" of the Plaintiff pursuant to **Cal. Govt. Code Section Section 12940 (j).**

99. Repeatedly and persistently at all times relevant herein, the Plaintiff herein complained to management of the harassment described herein, but such harassment  never and has never ceased.

100.   As a result of the aforesaid acts of Defendants, Plaintiff has, and continues to suffer, monetary damages in an amount which is currently unascertained. Plaintiffs will therefore request leave of the court to amend this Complaint to state

19

the amount of all such damages when they have been ascertained, or upon proof at the time of trial.

101.    As a result of the aforesaid racial harassment, the Plaintiff has been held up to great derision and embarrassment with his fellow workers, customers, friends, members of the community and families, and has suffered emotional distress because Defendants demonstrated to him that they would not recognize nor accept him as an employee solely because of their race and religion and in retaliation for plaintiff's complaints. Plaintiff is informed and believes that the Defendants and their management acted deliberately for the purposes of injuring him as alleged above. Defendants, by and through their managing agents and employees, further acted intentionally and unreasonably because they knew and/or should have known that their conduct was likely to result in severe mental distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at time of trial.

102.    Plaintiff is informed and believes and thereon alleges that this cause of action is not preempted by the California Workers' Compensation Act on the grounds that harassment is not a risk or condition of Plaintiffs' employment.

103.    Because of the wrongful acts of Defendants as herein above alleged, Plaintiff has been and will in the future be required to employ physicians and surgeons to examine, treat and care for him and will incur additional medical expenses in an amount to be proven at the time of trial.

20

104.   In doing the acts set forth above, Defendants acted as herein alleged with a conscious disregard of Plaintiff's rights to a non discriminatory work place. Defendants have acted in utter disregard of their obligations under the law. The managing agents of Defendants have made conscious decisions to establish and to allow the existence of a hostile work place.  In addition, said managing agents have knowingly retained and promoted vicious employees, including managers, known by Defendants to be prejudiced against African American employees and employees over the age of 40. This conduct by Defendants was, and is, despicable, cruel and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at trial.

105.   In bringing this action, Plaintiff has been required to retain the services of counsel. Pursuant to **Government Code § 12965(b)**, they are entitled to an award of attorney fees.

**WHEREFORE**, Plaintiff prays for judgment as more fully set forth herein below

### FIFTH CAUSE OF ACTION

**Wrongful Termination in Violation of Public Policy**

**(AS TO Defendants Radio Shack)**

106.   The facts alleged in paragraphs 1 through 49 are hereby incorporated by reference with the same force and effect as if fully pleaded at length herein.

107.   Jurisdiction is invoked in this court pursuant to the California Supreme Court case of Tameny v. Atlantic Richfield Company (1980) 27 Cal. 3d 167.

108.   There is a fundamental and well established public policy of this state against discrimination in employment on the basis of race, age, sex and national origin.

21

1    Said public policy is embodied inter alia in Article I, Section 8 of the California

2    Constitution.

3    109.    There is also a fundamental and well established public policy of this state

4    against discrimination on the basis of age and race. That public policy is also

5    embodied inter alia in the California Fair Employment and Housing Act.

6    110.    Defendants have a long standing policy and practice of making personnel

7    decisions on the basis of factors prohibited by the public policies of this state.

8    111.    The policy and practice described in paragraphs -- was applied specifically to

9    the Plaintiff in this case as follows:

10

11         (A).    Termination of the employment of Plaintiff Frank Allen based upon

12                 race;

13         (B).    Termination of the employment of Plaintiff Frank Allen for race

14                 discrimination in defense of others; and

15         (C).    Termination of the employment of Plaintiff Frank Allen based upon

16                 Age;

17   112.   As a result of the aforesaid acts of Defendants, Plaintiff has suffered, and is

18          continuing to suffer, a loss of wages/salary, benefits, and other forms of

19          compensation in an amount which is currently unascertained.  As a result of

20          the discriminatory and retaliatory acts of Defendants the Plaintiff herein faces

21          substantial diminution of their future earning capacity in an amount which is

22          currently unascertained. Plaintiff will therefore request leave of the court to

23          amend this Complaint to state the amount of all such damages when they have

24          been ascertained or upon proof at the time of trial.

25   113.   As a result of the aforesaid acts of discrimination and retaliation in

26          employment, the Plaintiff has been held up to great derision and

27          embarrassment with their fellow workers, customers, friends, members of the

28          community and families, and has suffered emotional distress because

                                          22

1    Defendants have demonstrated to them that it will not recognize nor accept

2    them as employees solely on their merits but rejects them based upon

3    prohibited classifications described above.

4    114.   Plaintiff is informed and believes that the Defendant and its management acted

5    deliberately for the purposes of injuring them as alleged above.

6    115.   Defendants, by and through their managing agents and employees, further

7    acted intentionally and unreasonably because it knew and/or should have

8    known that its conduct was likely to result in severe mental distress. Plaintiff

9    therefore seeks damages for such emotional distress in an amount to be proven

10   at time of trial.

11   116.   Because of the wrongful acts of Defendants as herein above alleged, Plaintiff

12   has been and will in the future be required to employ physicians and surgeons

13   to examine, treat and care for them and will incur additional medical expenses

14   in an amount to be proven at the time of trial.

15   117.   In doing the acts set forth above, Defendants acted as alleged intentionally and

16   with a conscious disregard of the Plaintiff's right to equal employment

17   opportunities and to be free from discrimination on the basis of prohibited

18   factors. Defendants have acted and continue to act in utter disregard of its

19   obligations under the public policy of this state. Defendants have made

20   conscious decisions to discriminate against its employees for reasons

21   prohibited by law, specifically the Plaintiff herein, by treating him adversely in

22   the manner described above.

23   118.   In addition, said managing agents have retained, protected, promoted and

24   coddled vicious employees known by it to discriminate against its employees.

25   This conduct by Defendants was, and is, despicable, cruel and oppressive. The

26   Plaintiff is therefore entitled to an award of punitive damages in an amount to

27   be proven at trial.

28

23

1

2

### SIXTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress - Common Law

3

(As to All Defendants)

126.Plaintiff realleges and incorporates paragraphs 1 through 49 with the same force

4

5

and effect as if full pleaded at length herein.

6

127 .This is an action for damages pursuant to the common law of the State of

7

California as mandated by the California Supreme Court in the decision of <u>Rojo v.</u>

8

<u>Kliger,</u> (1990) 52 Cal. 3d 65.

9

10

128.The acts of Defendants  and agents, including   managers of Defendant, as

11

described above, were extreme and outrageous. **This includes, but is not limited to,**

12

**the following:**

13

14

   **(A)Wrongful termination based on Age and Race;**

15

   **(B) Falsely accusing plaintiff of criminal acts;**

16

   (C) Plaintiff was threatened and told to terminate his African American and

17

      Hispanic employees because they "did not fit the image' defendants

18

19

      wanted. Plaintiff was told he needed to "upgrade" his staff. Plaintiff was

20

      threatened that if he did not do this, he would be terminated.  Plaintiff, as

21

      the Store Manager felt he had a superb and competent staff, which was

22

23

      reflected by his store's success.   Plaintiff, rightfully and loyally defended

24

      his staff.  Soon after , plaintiff was retaliated against and terminated;

25

   (D)Hostile work environment,

26

**WHEREFORE,** Plaintiff prays for judgment as more fully set forth herein below.

27

28

24

1

### DEMAND FOR JURY TRIAL

2

Plaintiff Frank Allen hereby demands trial of this matter by jury.

3

### PRAYER FOR RELIEF

4

**WHEREFORE,** Plaintiff Frank Allen prays for relief as follows:

5

129.     For compensatory damages;

6

7

130.     For monetary damages to compensate for the emotional distress suffered by

8

Plaintiff;

9

131.     For punitive damages in an amount appropriate to punish Defendants for their

10

wrongful and malicious conduct and to set an example for others;

11

12

132.     For prejudgment and post-judgment interest accrued to date;

13

133.     For costs of suit incurred herein;

14

134.     For attorneys fees and costs pursuant to **California Government Code**

15

**§ 12965(b)** and other provisions of law; and

16

17

135.     For such other relief that this Court may deem just and proper.

18

19

Dated:

LAW OFFICES OF MAYOR JOSEPH L.
ALIOTO & ANGELA ALIOTO

20

21

22

By:

23

ANGELA ALIOTO
Attorney for Plaintiff Frank Allen

24

25

26

27

28

25

**EXHIBIT B**

Tracy Thompson (SBN 88173)
  tt@millerlawgroup.com
Adam J. Tullman (SBN 235694)
  ajt@millerlawgroup.com
MILLER LAW GROUP
A Professional Corporation
111 Sutter Street, Suite 700
San Francisco, CA 94104
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendant
RADIOSHACK CORPORATION

ENDORSED
F I L E D
Superior Court of California

JUN 21 2011

CLERK OF THE COURT
BY: WESLEY RAMIREZ
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

SAN FRANCISCO COUNTY SUPERIOR COURT

| | |
|---|---|
| FRANK ALLEN, | Case No.: CGC-11-511136 |
| Plaintiff, | **DEFENDANT RADIOSHACK CORPORATION'S ANSWER TO PLAINTIFF'S COMPLAINT** |
| v. | |
| RADIO SHACK CORPORATION, DONNA O'CAMPO and Does 1 through 100, | Complaint filed: May 20, 2011 |
| Defendants. | |

1    Defendant RADIOSHACK CORPORATION hereby answers Plaintiff FRANK
2  ALLEN's Complaint as follows:

## GENERAL DENIAL

6    Pursuant to Section 431.30(d) of the California Code of Civil Procedure,
7  Defendant hereby answers the Complaint by generally denying each and every allegation
8  contained therein.  Defendant further denies that Plaintiff has been damaged in any sum
9  whatsoever, or that Plaintiff is entitled to the relief requested or to any other relief, or that
10 Plaintiff has sustained any injury, damage, or loss by reason of any act, omission, or
11 negligence on the part of Defendant, or by reason of any act, omission, or negligence on the
12 part of any of Defendant's agents, servants, or employees.  Defendant further denies that it
13 is liable to Plaintiff under any theory, including, without limitation, the theories of liability
14 asserted in the Complaint.

## AFFIRMATIVE DEFENSES

18    Defendant asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

23    As a separate and affirmative defense to each and every cause of action set
24 forth in Plaintiff's Complaint, Defendant alleges that Plaintiff's claims are barred or limited by
25 the applicable statute(s) of limitations, including, but not limited to, California Government
26 Code sections 12960 and 12965(b), and California Code of Civil Procedure sections 335.1
27 and 340.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

## SECOND AFFIRMATIVE DEFENSE

### (Exhaustion of Administrative Remedies)

As a separate and affirmative defense to the First through Fifth causes of action set forth in Plaintiff's Complaint, Defendant alleges that Plaintiff has failed to comply with applicable procedural and administrative prerequisites, including the exhaustion of his administrative remedies with State and/or Federal agencies, the exhaustion of which is a condition precedent to the maintenance of this action.

## THIRD AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

As a separate and affirmative defense to each and every cause of action set forth in Plaintiff's Complaint, Defendant alleges that Plaintiff, by his acts and omissions, has waived and/or is estopped to allege the matters set forth in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

### (Doctrine of Unclean Hands)

As a separate and affirmative defense to each and every cause of action set forth in Plaintiff's Complaint, Defendant alleges that Plaintiff is barred from any relief by the doctrine of unclean hands.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

1

2

3

## FIFTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Preemption)

4      As a separate and affirmative defense to each and every cause of action set

5  forth in Plaintiff's Complaint, Defendant alleges that if Plaintiff has suffered physical and/or

6  emotional injury related to his employment with Defendant, his exclusive remedy for such

7  injury is provided by California Labor Code section 3200, *et seq.*, and/or any other workers'

8  compensation laws.

9

10

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

12

13      As a separate and affirmative defense to each and every cause of action set

14  forth in Plaintiff's Complaint, Defendant alleges that Plaintiff has failed to mitigate the

15  damages alleged in the Complaint.

16

17

## SEVENTH AFFIRMATIVE DEFENSE

### (After Acquired Evidence)

19

20      As a separate and affirmative defense to the First through Fifth causes of

21  action set forth in Plaintiff's Complaint, Defendant alleges that any recovery on Plaintiff's

22  Complaint, or any purported claim alleged therein, is barred to the extent that the Defendant

23  has discovered, or will discover, additional evidence indicating that Plaintiff has engaged in

24  conduct before or while employed by Defendant that precludes or limits his assertion of the

25  claims for relief and/or damages presented therein.

26

27

28

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Use Corrective Measures)

As a separate and affirmative defense to each and every cause of action set forth in Plaintiff's Complaint, Defendant alleges that Plaintiff is barred from any recovery because Defendant had in place and implemented, in good faith, policies, procedures and other measures that reasonably should have prevented the conduct Plaintiff alleges, and that Plaintiff unreasonably failed to invoke those measures or take other corrective actions to stop the alleged conduct.

## NINTH AFFIRMATIVE DEFENSE

### (Defendant's Appropriate Corrective Action)

As a separate and affirmative defense to each and every cause of action set forth in Plaintiff's Complaint, Defendant alleges that Plaintiff is barred from any recovery because Defendant had implemented one or more policies prohibiting the alleged acts and/or otherwise made good faith efforts to comply with applicable law and took immediate and appropriate corrective action when it became aware of the conduct alleged by Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

### (Privilege)

As a separate and affirmative defense to the Sixth cause of action set forth in Plaintiff's Complaint, Defendant's conduct was privileged.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

1

## RESERVATION OF RIGHTS

2

3        Defendant has not yet completed discovery of all the facts and circumstances

4  regarding the subject matter of the Complaint, and, accordingly, reserves the right to

5  amend, modify, revise or supplement this Answer, and to assert such additional affirmative

6  defenses that may appear and prove applicable during the course of this litigation.

7

8        WHEREFORE, Defendant prays for judgment as follows:

9        1.      That Plaintiff take nothing by this action;

10       2.      That the Complaint be dismissed in its entirety with prejudice, and

11  judgment entered in favor of Defendant;

12       3.      That Defendant be awarded its costs of suit;

13       4.      That Defendant be awarded its attorneys' fees according to proof; and

14       5.      That the Court award Defendant such other and further relief as the

15  Court may deem proper.

16

17  Dated:  June 21, 2011                    MILLER LAW GROUP
                                            A Professional Corporation
18

19

20                                          By: _____

21                                               Adam J. Tullman
                                                 Attorneys for Defendant RADIOSHACK
22  4840-6730-1385, v. 1                          CORPORATION

23

24

25

26

27

28

DEFENDANT RADIOSHACK CORPORATIONS ANSWER TO PLAINTIFF'S COMPLAINT
Case No.: CGC-11-511136

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

**PROOF OF SERVICE**

I, Pamela A. Leonard, declare that I am employed at Miller Law Group, A Professional Corporation, whose address is 111 Sutter Street, Suite 700, San Francisco, CA 94104; I am over the age of eighteen (18) years and am not a party to this action.  On the below date, by the method noted below, I served the following document(s):

**DEFENDANT RADIOSHACK CORPORATION'S ANSWER TO PLAINTIFF'S COMPLAINT**

on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

Angela M. Alioto, Esq.                        Attorney for Plaintiff: *Frank Allen*
Angela Mia Veronese, Esq.
Law Offices of Joseph L. Alioto and
Angela Alioto
700 Montgomery Street
San Francisco, CA  94111-2104

Tel:  (415) 434-8700
Fax:  (415) 438-4638

☒   **BY MAIL:**  By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing on this date at Miller Law Group, 111 Sutter Street, San Francisco, California. I declare that I am readily familiar with the business practice of Miller Law Group for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

☒   [State]  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 21, 2011 at San Francisco, California.

_____
Pamela A. Leonard

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

**EXHIBIT C**

**SUM-100**

# SUMMONS
### (CITACION JUDICIAL)

<table>
<tr><td></td><td>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Radio Shack Corporation, Donna O'Campo and Does 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Frank Allen

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of San Francisco<br>400 McAllister, San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):*<br>CGC-11-511136 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Angela Alioto (SBN 130328), 700 Montgomery Street, San Francisco, CA 94111, (415)434-8700

| DATE: MAY 2 0 2011 | Clerk, by | P. NAT | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

**BY FAX**

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Radio Shack Corporation, Donna O'Campo and Does 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Frank Allen

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Superior Court of California, County of San Francisco
400 McAllister, San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*

C G C 1 1 - 5 1 1 1 3 6

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del demandante, o del demandante que no tiene abogado, es):*

Angela Alioto (SBN 130328), 700 Montgomery Street, San Francisco, CA 94111, (415)434-8700

DATE:
*(Fecha)*   MAY 2 0 2011   CLERK OF THE COURT   Clerk, by **P. NATT**   , Deputy
*(Secretario)*   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): *Radio Shack Corporation*

   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other (specify):

4. ☒ by personal delivery on (date): 5/26/11

**BY FAX**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1     Angela M. Alioto, (SBN 130328)
     Angela Mia Veronese, (SBN 269942)
2     LAW OFFICES OF JOSEPH L. ALIOTO
     AND ANGELA ALIOTO
3     700 Montgomery Street
     San Francisco, CA  94111-2104
4     Telephone: (415) 434-8700
     Facsimile: (415) 438-4638
5

6     Attorneys for Plaintiff Frank Allen

ENDORSED
**FILED**
San Francisco County Superior Court

MAY 2 0 2011

CLERK OF THE COURT
BY:  PARAM NATT
             Deputy Clerk

7                    SUPERIOR COURT OF CALIFORNIA

8                     SAN FRANCISCO COUNTY

9                     UNLIMITED JURISDICTION

10                   C G C - 1 1 - 5 1 1 1 3 6

11    Frank Allen,                    )   CASE NO.

12                         )   COMPLAINT FOR DAMAGES FOR:

13    Plaintiff,                     )   1.  Disparate Treatment Based on
                               )       Race/National Origin (FEHA);

14    VS.                          )   2.  Retaliation (FEHA);

15    Radio Shack Corporation, Donna   )   3.  Discrimination Based on Age.
    O'Campo and Does 1 through 100   )
16                           )   4.  Hostile Work Environment
17    Defendants.                  )       (Harassment) (FEHA);

18                           )   5.  Wrongful Termination in
19                           )       Violation of Public Policy

20                           )   6.  Intentional Infliction of Emotional
                               )       Distress
21                           )   JURY TRIAL DEMANDED

22

23                                       BY FAX

24

25           Plaintiff Frank Allen complains against Defendants Radio Shack Corporation,

26

27 Donna O'Campo and Does 1-100, and demands a trial by jury of all issues and for

28 causes of alleged actions:

                                     1

## PARTIES AND JURISDICTION

1. At the pertinent times mentioned in this complaint, Plaintiff Frank Allen is a resident of the State of California, County of Alameda.

2. Defendant Radio Shack Corporation is an employer doing business in the State of California employing approximately 35,000+ employees. Radio Shack Corporation has 4480 company stores in the United States and Mexico, 1240 dealer outlets worldwide and over 940 wireless phone kiosks.

3. RadioShack Corporation is a multifaceted, multibillion dollar company, and one of the nation's largest retailers of consumer electronics.

4. Defendant Donna O'Campo was Defendant's regional manager at the time all acts occurred herein.

5. At all the pertinent times mentioned in this complaint, Defendants acted with the intent to cause a tortuous effect within the State of California, to the Plaintiff, within the State of California.

6. Defendants are directly liable for the harassing conduct of their supervisors, managers, division heads and other employees and agents.

7. Defendants are directly liable for the discriminatory and retaliatory conduct of their division heads, managers, supervisors and employees agents.

8. Plaintiffs are ignorant of the true names or capacities of the defendants sued here under the fictitious names DOES 1 through DOES 100. Plaintiffs are informed and believe that each of DOE defendants was responsible in some manner for the occurrences and injuries alleged in this Complaint.

2

9. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of each and every other defendant.

10. All acts complained of herein occurred in the City and County of san Francisco, California.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff Frank Allen has exhausted all applicable administrative remedies. Plaintiff Allen has received two Right to Sue letters from the California Department of Fair Employment and Housing. The right to sue letter against Defendant RadioShack Corporation is dated November 17, 2010 and the right to sue against Defendant Donna O'Campo is dated February 23, 2011.

### STATEMENT OF FACTS

12. Plaintiff Frank Allen is 56 years old African American male

13. Prior to Plaintiff's employment with the Defendant, Plaintiff served as a Marine Lance Corporal in the United Marine Corp.

14. Fourteen years ago, in December 1997 Plaintiff Allen was hired by Defendant Radio Shack as an Assistant Manager. Plaintiff worked at the Van Ness and Market location.

16. On or about March 1998, Plaintiff was promoted to Manager and was transferred to Store 3830 at 938 Market Street, where he has worked for the last 12 years.

17. Store 3830 is located in the Tenderloin district of San Francisco. Plaintiff loved his job and the store location. He built up this location's sales from a $600,000 store to a $1,400,000 store, due to his incredible ability, talent and rare form of salesmanship. Plaintiff was well known, liked and respected in the community.

3

18. For over 13 years Plaintiff had a stellar performance review.  Over the years
    plaintiff earned several awards and bonus' based on his performance.  For the year
    2009, Plaintiff's daily sales were so high at his store that he was awarded the # 3
    store manager of the entire Northwest District, out of about 1500 managers.  Three
    out of fifteen hundred managers.

19. Over the past five years, Plaintiff earned an average of $60,000 thousand dollars a
    year.

20. On or about, December of 2009, Greg Pappas the area Vice-President entered the
    store with defendant Donna O'Campo, the Human Resources Manager and the
    President of Loss Prevention. Mr. Pappas was immediately confrontational with
    the plaintiff. He wanted to know, among other things,   how long plaintiff had
    been employed by Radio Shack.  After plaintiff answered him, Pappas looked at
    him from head to toe and told Plaintiff, **"you may have a year left with Radio
    Shack. You have been in charge of the whole store for awhile. You MAY have
    another year".**  Plaintiff was stunned by this threat of termination. For 13 years
    Plaintiff was a stellar employee, until Defendant's new management decided he
    did not "fit the right image".

21. Plaintiff immediately made a formal complaint about Mr. Pappas' comments and
    behavior, to his then District Manager Hanni. Plaintiff also made a complaint
    about Pappas at the next manager's meeting, where district managers Hanni and
    Defendant O' Campo where present.  There were several managers at this meeting
    from all over California.

22. A month later, in January of 2010, Defendant Donna O' Campo was named as
    Plaintiff's new District Manager. She replaced District manager Hanni. Defendant
    O'Campo started working as District manager in or around mid-February 2010.

23. On March 23rd, 2010, about one month after becoming District Manager
    Defendant O'Campo, out of the blue, came into the store and wrote plaintiff up
    for "cash shortages" that allegedly happened a YEAR prior, under the previous

4

1    District Manager  Hanni . To be written up for the first time in his 13  year career

2    for what basically is a criminal act, stunned the plaintiff and caused his emotional

3    distress.

4    Plaintiff Allen had NEVER been written up in the entire 13 years as an

5    employee of Defendant Radio Shack Corporation.

6    24.   On March 29th, 2010, Defendant O' Campo called Plaintiff and told him+ that she

7        was coming down for lockinpegs. Lockinpegs  are pegs used to secure

8        merchandise to display.  Defendant O'Campo told Plaintiff Allen, *"you don't fit*

9        *the image that Radio Shack wants.  You don't have the right people in this store.*

10       *You need to upgrade your employees."* Defendants were determined to terminate

11       Plaintiff because he does not  "fit the image" that Radio Shack wanted.

12   25. Plaintiff was stunned by this comment and knew that the 'image' she was talking

13       about was based on his race and age and the race of his employees.

14   26. Plaintiff is a 56 year old African American. **His employee staff at that time**

15       **consisted of three African Americans, two Hispanics and one Caucasian.**

16   27. Defendant O' Campo told Plaintiff to set up interviews for her and she would

17       come in and interview applicants for the new staff that he, plaintiff was suppose to

18       terminate because **"they don't fit the image"**. Once the person was "acceptable" to

19       defendant O' Campo the present employees would be fired.  **Defendant O"Campo**

20       **was directing Plaintiff to do an illegal act, ie getting rid of the African American**

21       **and Hispanic employees.**

22   28. Plaintiff was very concerned and defended himself and his staff by reminding

23       Defendant O' Campo his excellent staff was excellent and of the fact that his store

24       is one of the best selling stores in the West.

25   29. Defendant O'Campo repeated that plaintiff and his staff "did not fit the image"

26       that Defendants now wanted.

27   30. Defendant  O'Campo  was referring to plaintiff's  race and the race of the

28       employees.

5

31. Six days later on April 4th, 2010, Ms. O' Campo returned to the store and told plaintiff **"if you don't get rid of your people I will get rid of you"**.

32. Nine days later, on the evening April 13th, 2010, Plaintiff had left the store to make a bank deposit and then went home as he did daily. Plaintiff had left $120 in his desk drawer as per custom and practice should a customer need change. When plaintiff left the store that evening, the drawer was locked. After plaintiff left, Defendant O' Campo returned to the store. Rosetta, an employee of Defendant Radio Shack, who had a key to the drawer, had just sold some computers and had opened the cash drawer to make some change.

33. Defendant O'Campo bagan going through plaintiff's desk and became angry that the cash drawer was not locked. Rosetta, who was very distressed, called her boss, the Plaintiff and informed him that defendant O'Campo was going through his desk.

34. The next day Plaintiff called Defendant O'Campo. Defendant O' Campo accused Plaintiff of leaving the cash drawer open. Rosetta had told O'Campo that the she had unlocked the drawer because she had just opened the drawer to make change for a purchase.

35. Plaintiff told Defendant O' Campo that he locked the drawer when he left the store the day before and that Rosetta had a key if she needed to get change for a customer. He again explained that when he left the store the previous evening at 5:30pm the drawer was locked. Defendant O' Campo told Plaintiff that she would check with her boss and let him know what the next step would be.

36. Plaintiff and defendant O'Campo discussed getting a lock for the door going to the office. O'campo said she would get a lock. Plaintiff then emailed O'Campo reminding her of the lock for the door, but she never replied and did not purchase a lock for the door.

37. Two weeks later, on April 27th, 2010, Defendant O' Campo returned to the store with the manager of loss prevention. Defendant O' Campo stated to Plaintiff **"give**

6

1   me your keys, we are going to let you go for not taking care of **Radio Shack**

2   **merchandise"**.

3   38. Plaintiff Allen was stunned.   He replied, **"I have the best inventory in the**

4   **district, what is really going on here, it's not about the merchandise? Why are**

5   **you really firing me?"** Defendant  O' Campo stated, "sue me".

6   39. Plaintiff was asked to leave the store he had successfully managed for 12 years.

7   40. Plaintiff asked Defendant O'Campo for something in writing stating the reason for

8   his termination.  Defendant O'Campo  told him he would be would be receiving

9   something in the mail.

10  41. To this day, Plaintiff Allen has not received a termination letter or any

11  correspondence from defendant Radio Shack after 13 years of loyal and stellar

12  service.

13  42. The next day, Plaintiff Allen called Defendant's Human Resources in San Ramon

14  and told the lady that Radio Shack terminated me based "on who I am". Human

15  Resources told Plaintiff that they would stand by the managers decision.

16  43. Plaintiff then called Fort Worth Texas and asked for Human resources so that he

17  could make his complaint, and they referred him back to San Ramon.

18  44. Plaintiff did" not fit "the new Radio Shack non African American image and as a

19  result he was terminated. A non African American twenty three year old replaced

20  him. In fact, all of the employees were replaced with non-African American s and

21  non-Hispanic employees under 40 years old.

22

23  45. For the year 2009, Plaintiff was voted manager of the month in the North West

24  District for 11 out of the 12 months.

25  46. A month or so later two African American employees were terminated, the one

26  Hispanic employee was terminated. The ONLY employee who was NOT

27  terminated was the Caucasian employee. He is still there.

28

7

47. After 13 years of loyal and stellar service, plaintiff was replaced with a 23 year old non-African American manager. The 2 other African Americans employees were replaced with non-African American employees in their twenties.

48. On April 29, 2010 Plaintiff was contacted by a Radio Shack Manager who informed him that the Manager who replaced Plaintiff knew she would be taking Plaintiff's job a month prior to Plaintiff's termination.

49. One month prior to Plaintiff's termination, Defendants already had a 23 year old non-African American employee who fit the new Radio shack image, ready and waiting to replace Plaintiff.

## FIRST CAUSE OF ACTION

**Disparate Treatment in Violation of FEHA Based on RACE and National Origin**
**Cal. Govt. Code Sections 12900 et. seq.**
**(As to All Defendants)**

50. Plaintiff realleges and incorporates paragraphs 1 through 49 with the same force and effect as if fully pleaded at length herein.

51. Jurisdiction in this court is invoked pursuant to **California Government Code §§ 12900, 12921, 12926, 12940 and 12965**, specifically **Sections 12940(a), 12941 and 12921(a)** [Collectively referred to as "FEHA"]. Defendants are not exempted from the statutes cited in this paragraph by any local, state or federal laws.

52. Defendants regularly employ more than five employees, and are subject to suit under **FEHA** for conduct prohibited thereby. **Cal. Govt. Code Section 12940 (j)(4)(A).**

53. The Plaintiff herein is a member of a class protected by FEHA. Plaintiff Frank Allen is African American. Plaintiff was mistreated based on his race and national origin, **including but not limited being subject to being written up and**

8

terminated because he "did not fit the image' that Radio Shack now wanted for their stores. Plaintiff was wrongfully accused of committing a crime. Plaintiff was treated worse than the non African employees.

54. At all times herein relevant, the Plaintiff's job performance was always satisfactory and was usually excellent.

55. Plaintiff has been subjected to discrimination and disparate treatment which treatment has included but is not limited to the following forms:

(A) Plaintiff was wrongfully written up;

(B) Plaintiff was threatened by the vice President and the regional manager;

(C) Plaintiff was wrongfully accused of cash shortages and not protecting property.

(D) Defendants created and maintained an intolerable and hostile work environment for Plaintiff, including wrongful write-ups, confrontations by the wrong doers, criminal accusations and condoning the discrimination;

(E) Defendants disproportionately scrutinized Plaintiff's conduct;

( F) Defendants subjected Plaintiff to less favorable terms and conditions of his employment based on his age and race and the race of his staff;

(G) Defendants threatened Plaintiff that if he did not "upgrade" his employees he would be terminated;

(H) Defendants created and condoned a hostile work environment leading to Plaintiff's wrongful termination.

9

56. The discriminatory acts described pursuant to the preceding paragraphs are part of a longstanding, deep-rooted policy and/or practice by the management of Defendants to discriminate and retaliate against African employees.

57. Defendants at all times relevant herein disparately applied its alleged rules to the Plaintiff.

58. The managers of Defendants were either aware of the discrimination described herein and took no action to prevent it and/or themselves actively participated in the discrimination. Plaintiff petitioned the management of the Defendants to stop such discriminatory practices. Because such petitions were ignored, the Plaintiff was required to file an administrative complaint with the Department of Fair Employment and Housing, and to initiate the current lawsuit.

59. This action is not preempted by the California Workers' Compensation Act because discrimination is not a risk or condition of employment.

60. The acts complained of herein were either approved, condoned or taken by one or more managing agents of Defendants, each of whom had the authority to make corporate policy and/or to direct a substantial portion of the Defendants' business.

61. Because of the aforesaid acts of Defendants, Plaintiff suffered, and continues to suffer losses of wages/salary, commissions, renewals, bonuses and other employee compensation in an amount that is currently un-ascertained. Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained, or upon proof at the time of trial.

10

62. Plaintiff was held up to great derision and embarrassment with fellow workers, friends, members of the community and family, and have suffered emotional distress because the Defendants demonstrated to Plaintiff that they would not recognize nor accept him as an employee solely because of Plaintiff's race and national origin. Plaintiff is informed and believes that the Defendants and their management acted deliberately for the purposes of injuring him. Defendants, by and through the named Defendants' agents and employees, further acted intentionally and unreasonably because they knew and/or should have known that their conduct was likely to result in severe mental distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at time of trial.

63. Because of the wrongful acts of Defendants as herein above alleged, Plaintiff has been and will in the future be required to employ physicians and surgeons to examine, treat and care for him and will incur additional medical expenses in an amount to be proven at the time of trial.

64. In doing the acts set forth above, Defendants acted as herein alleged with a conscious disregard of Plaintiff right to be free from discrimination and/ or disparate treatment. Defendant acted, as alleged, with the malicious intention of depriving the Plaintiff of employment opportunities and benefits that must be accorded to all employees. Defendants have retained and promoted vicious employees and managers known by it to be prejudiced against Americans of African descent. This conduct by Defendants was, and is, despicable, cruel and

11

1    oppressive. Plaintiff is therefore entitled to an award of punitive damages in an

2    amount to be proven at trial.

3    65. In bringing this action, Plaintiff has been required to retain the services of counsel.

4

5    Pursuant to **Government Code § 12965(b)**, they are entitled to an award of

6    attorney fees.

7    **WHEREFORE**, Plaintiffs pray for judgment as more fully set forth herein below.

8
                                    <u>SECOND CAUSE OF ACTION</u>
9

10                              Retaliation in Violation of FEHA
                                Cal. Govt. Code Sections 12900 et. seq.
11                              **(As to Defendants RadioShack Corporation)**

12   66. Plaintiff realleges and incorporates all of the facts set forth in paragraphs 1 through

13
           49 with the same force and effect as if fully pleaded at length herein.
14

15   67. Jurisdiction in this court  is invoked pursuant to **California Government Code §§**

16       **12900, 12921, 12926, 12940 and 12965**, specifically **Section 12940(h [Collectively**

17       referred to  as **"FEHA"]**.

18
     68. Defendants are not exempted from the statutes cited in this paragraph by any
19

20       local, state or federal laws.

21   69. Defendants regularly employ more than five employees, and are subject to suit

22
         under **FEHA** for conduct prohibited thereby.
23

24   70. At all times herein relevant, Plaintiff's job performance was always satisfactory

25       and was usually excellent.

26   71. This is an action for damages based on discrimination and harassment against

27
         Plaintiff for having opposed employment practices made unlawful pursuant to the
28

                                              12

California FAIR EMPLOYMENT AND HOUSING ACT ["FEHA"], i.e., Cal.

Gov. Code §§ 12900, 12921, 12926, 12940 and 12965, specifically Section 12940(h).

72. Plaintiff has engaged in activity protected by FEHA by repeatedly and persistently opposing acts by Defendant that violate the FEHA.

73. Specifically, Plaintiff has opposed acts he reasonably believes to be discrimination and harassment based upon race. For example, Plaintiff was threatened and told to terminate his African American and Hispanic employees because they "did not fit the image' defendants wanted. Plaintiff was told he needed to "upgrade" his staff. Plaintiff was threatened that if he did not do this, he would be terminated. Plaintiff, as the Store Manager felt he had a superb and competent staff, which was reflected by his store's success.   Soon after, plaintiff was retaliated against and terminated. As a direct and proximate result of such opposition, the Defendants have taken adverse actions against the Plaintiff that have had a significant impact on his employment status, up to and including his termination.

74. Plaintiff is informed and believes and thereon alleges that this cause of action is not preempted by the California Workers' Compensation Act on the grounds that retaliation for opposing unlawful discrimination or harassment is not a risk or condition of his employment.

75. As a result of the adverse employment actions by Defendants, including, including but not limited to constructive termination, Plaintiff has, and continue to, suffer a loss of wages/salary, benefits, and other forms of compensation in an amount which is currently unascertained. As a result of the acts of Defendants, the

13

1   Plaintiff herein also faces a substantial diminution of his future earning capacity in

2   an amount which is currently unascertained. Plaintiff will therefore request leave

3   of the court to amend this Complaint to state the amount of all such damages

4

5   when he has been ascertained or upon proof at the time of trial.

6   76. As a result of the adverse employment actions by Defendants, the Plaintiff has

7   been held up to great derision and embarrassment with his fellow workers,

8   customers, friends, members of the community and families, and has suffered

9

10  emotional distress because Defendants have demonstrated to him that they would

11  not tolerate employees complaining of the illegal employment discrimination and

12  harassment set forth above. Plaintiff is informed and believes that the Defendants

13  and its employees, agents and management acted deliberately for the purposes of

14

15  injuring him as alleged above. Defendants , by and through their employees,

16  agents and management, further acted intentionally and unreasonably because

17  they knew and/or should have known that their conduct was likely to result in

18

19  severe mental distress to the Plaintiff. Plaintiff therefore seeks damages for such

20  emotional distress in an amount to be proven at time of trial.

21  77. Because of the wrongful acts of Defendants as herein above alleged, Plaintiff has

22  been and will in the future be required to employ physicians and surgeons to

23

24  examine, treat and care for them and will incur additional medical expenses in an

25  amount to be proven at the time of trial.

26  78. In doing the acts as described above, Defendants, by and through their employees,

27  agents and management knowingly and intentionally retaliated against those

28

14

1    among its' employees, specifically the Plaintiff, who protested the discrimination

2    and harassment in employment set forth herein.   The managing agents of

3    Defendants have made conscious decisions to retaliate against the Plaintiff as a

4
     means of making "an example" of him, in the hopes of deterring other employees

5
     from coming forward to oppose such illegal activity.  In addition, said managing

6
     agents have knowingly retained and protected vicious employees, including

7
     agents.  This conduct by Defendant was, and is, despicable, cruel and oppressive.

8
     The Plaintiff is therefore entitled to an award of punitive damages in an amount to

9
10   be proven at trial.

11

12   79. In bringing this action, Plaintiffs have been required to retain the services of

13   counsel. Pursuant to **Government Code § 12965(b)**, they are entitled to an award

14
     of attorney fees.

15

16   WHEREFORE, Plaintiff prays for judgment as more fully set forth herein below

17

18                            THIRD CAUSE OF ACTION

19                   Age Discrimination in Violation of FEHA
20                     Cal. Govt. Code Sections 12900 et. seq.
                              (As to All Defendants)
21   80. Plaintiff incorporates by reference all of the facts set forth in paragraphs 1 through

22   49 with the same force and effect as if fully pleaded at length herein

23
24   81. Jurisdiction in this court  is invoked pursuant to **California Government Code § §**

25   **12900, 12921, 12926, 12940** and **12965** [Collectively referred to  as "**FEHA**"].

26   Defendant is not exempted from the statutes cited in this paragraph by  any local,
27
     stat or federal laws.
28

                                        15

82.    Defendant regularly employs more than five employees, and is subject to suit under **FEHA** for conduct prohibited thereby.

83. The plaintiff is a member of a class protected by **FEHA**. He is 56 years of age.

84. At all times herein relevant, Plaintiff's job performance was always satisfactory and was usually excellent.

85. Defendants terminated the employment of Plaintiff as a result of his Age. For example, after Plaintiff was asked by a Vice president, how long he had been at Radio Shack, and after looking at plaintiff from Head to toe, told plaintiff he might "have another Year with Radio Shack". In fact, a couple months later, after 13 years of loyal service, Plaintiff was terminated and replaced by a non-African American 23 year old.

86. As a result of the aforesaid discriminatory acts, Plaintiff has suffered and is continuing to suffer a loss of wages/salary, benefits and other employee compensation in an amount which is currently un-ascertained. Plaintiff faces a substantial diminution of her future earning capacity in an amount which is currently un-ascertained. Plaintiff will request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained, or upon proof at the time of trial.

87. As a result of the aforesaid acts of discrimination, Plaintiff has been held up to great derision and embarrassment with fellow workers, friends, members of the community and family, and has continued to suffer emotional distress. Plaintiff is

16

1    informed and believes that the defendant and its management acted deliberately

2    for the purposes of injuring her.

3
     88.    Defendant, by and through its managing agents and employees, further acted
4
5          intentionally and unreasonably because they knew and/or should have known

6          that their conduct was likely to result in additional, severe mental distress.

7          Plaintiff therefore seeks damages for such emotional distress in an amount to be
8
9          proven at time of trial.

10   89.    Plaintiff is informed and believes and thereon allege that this cause of action is

11         not preempted by the California Workers' Compensation Act on the grounds that

12         employment discrimination is not a risk or condition of her employment.
13
14   90.    Because of the wrongful acts of Defendant as herein above alleged, Plaintiff has

15         been and/ or will in the future be required to employ physicians and mental

16         health care professionals to examine, treat and care for her and will incur
17
           additional medical expenses in an amount to be proven at the time of trial.
18
19   91.    In doing the acts set forth above, Defendant and its managing agents acted as

20         herein alleged with a conscious disregard of Plaintiff's right to be free from

21         discrimination based on age.  Defendant acted, as alleged, with the malicious

22         intention of depriving Plaintiff of employment opportunities and benefits that
23
24         must be accorded to all employees regardless of their age.  Defendant has retained,

25         promoted and coddled employees and managers known by it to be vicious in that

26         they are prejudiced against older employees.  This conduct by Defendant was, and

27

28

                                        17

1   is, despicable, cruel and oppressive. The Plaintiff is therefore entitled to an award

2   of punitive damages in an amount to be proven at trial.

3
4   92.   In bringing this action, Plaintiff has been required to retain the services of

5   counsel. Pursuant to **California Government Code § 12965(b)**, she is entitled to

6   and hereby requests an award of attorney fees and costs of suit.

7   **WHEREFORE**, Plaintiff prays for judgment as more fully set forth herein below.

8   <u>**FOURTH CAUSE OF ACTION**</u>

9   **Harassment In Violation of FEHA**
    **(Hostile Work Environment)**
10  Cal. Govt. Code Sections 12900 et. seq.
    **(As to all Defendants )**
11
12  93. Plaintiff realleges and incorporate paragraphs 1 through 49 with the same force

13      and effect as if fully pleaded at length herein

14  94. Jurisdiction in this court is invoked pursuant to the **FAIR EMPLOYMENT AND**

15      **HOUSING ACT ["FEHA "]**, i.e.,Gov.Code § § 12900, 12921, 12926, 12940 **and**

16      12965, specifically Section 12940 (j).

17  95. Defendants are comprised of entities and/or individuals with an obligation under

18      the law to assure an environment in which its employees can work freely without

19      fear of harassment.

20  96. Defendants have allowed, condoned, enabled and refused to prevent the

21      harassment of Plaintiff, by themselves, agents, managerial, and other employees.

22      Said harassment included, but is not limited to, the following:

23          (A)     Making false accusations against the plaintiff:

24          (B)     Falsely accusing plaintiff of criminal acts

25          (C)     Threatening Plaintiff with termination when he would not engage

26                  in racial discrimination;

27          (D)     Verbally threatening Plaintiff with threat of termination;

28
                                        18

1       (E)      Ongoing excessive and disproportionate scrutiny of Plaintiff

2               conduct;

3       (F)      Defendants at all times creating and condoning a hostile work

4               environment for Plaintiff;

5       (G)      Defendants at all times creating and condoning an intolerable

6               work environment for Plaintiff;

7       (H)      Public humiliation of  Plaintiffs  by Defendants;

8       (I)      Racially motivated disrespect toward Plaintiff; and

9       (J)      Wrongfully Terminating Plaintiff and replacing plaintiff with 23

10               year old non-African American.

11  97. The harassment described in the preceding   paragraphs and otherwise described

12  in detail herein was and is so severe and pervasive that the working conditions of

13  the Plaintiff was altered into a hostile and unsafe work environment.

14

15  98. The harassment described in the preceding   paragraph and otherwise described in

16  detail herein was and is so severe and pervasive that the working conditions of the

17  Plaintiff constituted "harassment" of the Plaintiff pursuant to **Cal. Govt. Code**

18  **Section Section 12940 (j).**

19

20  99. Repeatedly and persistently at all times relevant herein, the Plaintiff herein

21  complained to management of the harassment described herein, but such

22  harassment  never and has never ceased.

23

24  100.   As a result of the aforesaid acts of Defendants, Plaintiff has, and continues to

25  suffer, monetary damages in an amount which is currently unascertained.

26  Plaintiffs will therefore request leave of the court to amend this Complaint to state

27

28

1    the amount of all such damages when they have been ascertained, or upon proof at

2    the time of trial.

3
4    101.   As a result of the aforesaid racial harassment, the Plaintiff has been held up to

5    great derision and embarrassment with his fellow workers, customers, friends,

6    members of the community and families, and has suffered emotional distress

7    because Defendants demonstrated to him that they would not recognize nor accept

8    him as an employee solely because of their race and religion and in retaliation for

9

10   plaintiff's complaints. Plaintiff is informed and believes that the Defendants and

11   their management acted deliberately for the purposes of injuring him as alleged

12   above. Defendants, by and through their managing agents and employees, further

13   acted intentionally and unreasonably because they knew and/or should have

14   known that their conduct was likely to result in severe mental distress. Plaintiff

15

16   therefore seeks damages for such emotional distress in an amount to be proven at

17   time of trial.

18

19   102.   Plaintiff is informed and believes and thereon alleges that this cause of action is

20   not preempted by the California Workers' Compensation Act on the grounds that

21   harassment is not a risk or condition of Plaintiffs' employment.

22

23   103.   Because of the wrongful acts of Defendants as herein above alleged, Plaintiff

24   has been and will in the future be required to employ physicians and surgeons to

25   examine, treat and care for him and will incur additional medical expenses in an

26   amount to be proven at the time of trial.

27

28

104. In doing the acts set forth above, Defendants acted as herein alleged with a conscious disregard of Plaintiff's rights to a non discriminatory work place. Defendants have acted in utter disregard of their obligations under the law. The managing agents of Defendants have made conscious decisions to establish and to allow the existence of a hostile work place. In addition, said managing agents have knowingly retained and promoted vicious employees, including managers, known by Defendants to be prejudiced against African American employees and employees over the age of 40. This conduct by Defendants was, and is, despicable, cruel and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at trial.

105. In bringing this action, Plaintiff has been required to retain the services of counsel. Pursuant to **Government Code § 12965(b),** they are entitled to an award of attorney fees.

**WHEREFORE,** Plaintiff prays for judgment as more fully set forth herein below

## FIFTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (AS TO Defendants Radio Shack)

106. The facts alleged in paragraphs 1 through 49 are hereby incorporated by reference with the same force and effect as if fully pleaded at length herein.

107. Jurisdiction is invoked in this court pursuant to the California Supreme Court case of Tameny v. Atlantic Richfield Company (1980) 27 Cal. 3d 167.

108. There is a fundamental and well established public policy of this state against discrimination in employment on the basis of race, age, sex and national origin.

21

1    Said public policy is embodied inter alia in Article I, Section 8 of the California

2    Constitution.

3  109.    There is also a fundamental and well established public policy of this state

4      against discrimination on the basis of age and race. That public policy is also

5      embodied inter alia in the California Fair Employment and Housing Act.

6  110.    Defendants have a long standing policy and practice of making personnel

7      decisions on the basis of factors prohibited by the public policies of this state.

8  111.    The policy and practice described in paragraphs -- was applied specifically to

9      the Plaintiff in this case as follows:

10

11        (A).    Termination of the employment of Plaintiff Frank Allen based upon

12            race;

13        (B).    Termination of the employment of Plaintiff Frank Allen for race

14            discrimination in defense of others; and

15        (C).    Termination of the employment of Plaintiff Frank Allen based upon

16            Age;

17  112.    As a result of the aforesaid acts of Defendants, Plaintiff has suffered, and is

18      continuing to suffer, a loss of wages/salary, benefits, and other forms of

19      compensation in an amount which is currently unascertained.  As a result of

20      the discriminatory and retaliatory acts of Defendants the Plaintiff herein faces

21      substantial diminution of their future earning capacity in an amount which is

22      currently unascertained. Plaintiff will therefore request leave of the court to

23      amend this Complaint to state the amount of all such damages when they have

24      been ascertained or upon proof at the time of trial.

25  113.    As a result of the aforesaid acts of discrimination and retaliation in

26      employment, the Plaintiff has been held up to great derision and

27      embarrassment with their fellow workers, customers, friends, members of the

28      community and families, and has suffered emotional distress because

                                    22

1  Defendants have demonstrated to them that it will not recognize nor accept

2  them as employees solely on their merits but rejects them based upon

3  prohibited classifications described above.

4  114.  Plaintiff is informed and believes that the Defendant and its management acted

5  deliberately for the purposes of injuring them as alleged above.

6  115.  Defendants, by and through their managing agents and employees, further

7  acted intentionally and unreasonably because it knew and/or should have

8  known that its conduct was likely to result in severe mental distress. Plaintiff

9  therefore seeks damages for such emotional distress in an amount to be proven

10  at time of trial.

11  116.  Because of the wrongful acts of Defendants as herein above alleged, Plaintiff

12  has been and will in the future be required to employ physicians and surgeons

13  to examine, treat and care for them and will incur additional medical expenses

14  in an amount to be proven at the time of trial.

15  117.  In doing the acts set forth above, Defendants acted as alleged intentionally and

16  with a conscious disregard of the Plaintiff's right to equal employment

17  opportunities and to be free from discrimination on the basis of prohibited

18  factors. Defendants have acted and continue to act in utter disregard of its

19  obligations under the public policy of this state. Defendants have made

20  conscious decisions to discriminate against its employees for reasons

21  prohibited by law, specifically the Plaintiff herein, by treating him adversely in

22  the manner described above.

23  118.  In addition, said managing agents have retained, protected, promoted and

24  coddled vicious employees known by it to discriminate against its employees.

25  This conduct by Defendants was, and is, despicable, cruel and oppressive. The

26  Plaintiff is therefore entitled to an award of punitive damages in an amount to

27  be proven at trial.

28

23

## SIXTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress - Common Law
(As to All Defendants)

126. Plaintiff realleges and incorporates paragraphs 1 through 49 with the same force and effect as if full pleaded at length herein.

127. This is an action for damages pursuant to the common law of the State of California as mandated by the California Supreme Court in the decision of <u>Rojo v. Kliger,</u> (1990) 52 Cal. 3d 65.

128. The acts of Defendants and agents, including managers of Defendant, as described above, were extreme and outrageous. **This includes, but is not limited to, the following:**

    **(A) Wrongful termination based on Age and Race;**

    **(B) Falsely accusing plaintiff of criminal acts;**

    (C) Plaintiff was threatened and told to terminate his African American and Hispanic employees because they "did not fit the image' defendants wanted. Plaintiff was told he needed to "upgrade" his staff. Plaintiff was threatened that if he did not do this, he would be terminated. Plaintiff, as the Store Manager felt he had a superb and competent staff, which was reflected by his store's success. Plaintiff, rightfully and loyally defended his staff. Soon after , plaintiff was retaliated against and terminated;

    (D) Hostile work environment,

WHEREFORE, Plaintiff prays for judgment as more fully set forth herein below.

24

## DEMAND FOR JURY TRIAL

Plaintiff Frank Allen hereby demands trial of this matter by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Frank Allen prays for relief as follows:

129.    For compensatory damages;

130.    For monetary damages to compensate for the emotional distress suffered by Plaintiff;

131.    For punitive damages in an amount appropriate to punish Defendants for their wrongful and malicious conduct and to set an example for others;

132.    For prejudgment and post-judgment interest accrued to date;

133.    For costs of suit incurred herein;

134.    For attorneys fees and costs pursuant to **California Government Code § 12965(b)** and other provisions of law; and

135.    For such other relief that this Court may deem just and proper.


Dated:                                      LAW OFFICES OF MAYOR JOSEPH L.
                                            ALIOTO & ANGELA ALIOTO


                                            By: _____
                                            ANGELA ALIOTO
                                            Attorney for Plaintiff Frank Allen

25

CASE NUMBER: CGC-11-511136 FRANK ALLEN VS. RADIO SHACK CORPORATION et al

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **OCT-21-2011**

**TIME:** **9:00AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

# Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

  1) Judicial Arbitration
  2) Mediation
  3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration.  If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision.  In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration.  A case is ordered to arbitration after the Case Management Conference.  An arbitrator is chosen from the Court's Arbitration Panel.  Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference.  Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision.  Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations.  The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case.  The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case.  Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions.  Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes.  An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at **www.sfsuperiorcourt.org**.  Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties.  A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed.  If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial.  Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

*Mediation Services of the Bar Association of San Francisco*

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by BASF pursuant to strict educational and experience requirements..

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $250 per party administration fee, parties select a specific mediator from the list of approved mediation providers or BASF will help them select an appropriate mediator for the matter. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at **www.sfbar.org/mediation** or you may call the BASF at 415-982-1600.

*Judicial Mediation*

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court's Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $100 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $250 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the Case Management Statement (CM-110).

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

**Cost**

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103.
San Francisco, CA   94102
(415) 551-3876

Or, visit the Superior Court Website at **www.sfsuperiorcourt.org**

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

| | |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION**<br><br>DEPARTMENT  212 |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation        ☐  Mediation Services of BASF    ☐    Judicial Mediation
☐ Binding arbitration                                            Judge _____
☐ Non-binding judicial arbitration                              Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff   ☐   Defendant   ☐  Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff   ☐   Defendant   ☐  Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff   ☐   Defendant   ☐  Cross-defendant | | Dated: _____ |

☐  *Additional signature(s) attached*

**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*   ☐ **UNLIMITED CASE**   ☐ **LIMITED CASE** | |
| (Amount demanded     (Amount demanded is $25,000 exceeds $25,000)    or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:          Dept.:          Div.:          Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. Party or parties *(answer one)*:
   a. ☐  This statement is submitted by party *(name)*:
   b. ☐  This statement is submitted jointly by parties *(names)*:

2. Complaint and cross-complaint *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date)*:
   b. ☐  The cross-complaint, if any, was filed on *(date)*:

3. Service *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not)*:

      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐  have had a default entered against them *(specify names)*:

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. Description of case
   a.  Type of case in  ☐  complaint   ☐  cross-complaint     *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
 a. ☐ The trial has been set for *(date):*
 b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

 c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
 a. ☐ days *(specify number):*
 b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
 a. Attorney:
 b. Firm:
 c. Address:
 d. Telephone number:
 e. Fax number:
 f. E-mail address:
 g. Party represented:
 ☐ Additional representation is described in Attachment 8.

9. **Preference**
 ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
 a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
 b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
 c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply):*
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☐ Other *(specify):*

e.   ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f.   ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g.   ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

a.   ☐ Insurance carrier, if any, for party filing this statement *(name):*

b.   Reservation of rights:   ☐ Yes   ☐ No

c.   ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy   ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**

a.   ☐ There are companion, underlying, or related cases.
- (1) Name of case:
- (2) Name of court:
- (3) Case number:
- (4) Status:

☐ Additional cases are described in Attachment 14a.

b.   ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
| --- | --- | --- |

   c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____     ► _____
(TYPE OR PRINT NAME)                     (SIGNATURE OF PARTY OR ATTORNEY)

_____     ► _____
(TYPE OR PRINT NAME)                     (SIGNATURE OF PARTY OR ATTORNEY)

                                      ☐ Additional signatures are attached.



# Superior Court of California
## County of San Francisco



HON. KATHERINE FEINSTEIN
PRESIDING JUDGE

### Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

| | |
|---|---|
| The Honorable Linda Colfax | The Honorable Tomar Mason |
| The Honorable Michael Begert | The Honorable James J. McBride |
| The Honorable Gail Dekreon | The Honorable Ronald Quidachay |
| The Honorable Ernest H. Goldsmith | The Honorable A. James Robertson, II |
| The Honorable Harold E. Kahn | The Honorable John K. Stewart |
| The Honorable Curtis Karnow | The Honorable Monica F. Wiley |
| The Honorable Charlene P. Kiesselbach | The Honorable Mary E. Wiss |
| The Honorable Patrick J. Mahoney | The Honorable Charlotte W. Woolard |

Parties interested in Judicial Mediation should file the Stipulation to Alternative Dispute Resolution form indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 610. A preference for a specific judge may be indicated on the form but assignment to a particular judge is not guaranteed. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

03/2011 (js)



# MEDIATION SERVICES

## What users are saying . . .

"We had an excellent experience and, after 8½ hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

Robert Charles Friese, Esq.
Shartsis Friese LLP

"The BASF Mediation Services is the best deal in town and the mediator was the best I have ever experienced."

Vernon Bradley, Esq.
Bradley Law Offices

"Much thanks to the mediator and The Bar Association of San Francisco. The mediator was extraordinary; he went above and beyond the call of duty, and his knowledge of real property issues greatly assisted the parties."

Robert P. Travis, Esq.
Travis and Pon

"BASF staff was very helpful — stayed on the task and kept after a hard to reach party. The mediator was great!"

Mark Abelson, Esq.
Campagnoli, Abelson
& Campagnoli

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

Denise A. Leadbetter, Esq.
Zacks, Utrecht & Leadbetter

- Business
- Civil Rights
- Commercial
- Construction
- Contracts
- Disability
- Discrimination
- Education
- Employment/Workplace
- Environmental
- Family
- Family-Certified Specialists
- Fee Disputes
- Financial
- Government
- Insurance
- Intellectual Property
- Intra-Organizational
- Labor
- Landlord/Tenant
- Land Use
- LGBT Issues
- Malpractice: Legal-Medical-Professional
- Partnership Dissolutions
- Personal Injury
- Probate/Trust
- Products Liability
- Real Estate
- Securities
- Taxation
- Uninsured Motorist
- Women's Issues
- And more...

## WHAT IS BASF'S MEDIATION SERVICE?

Mediation Services was established in 2005 by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. Our mediation service can assist with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our rigorous training and experience requirements. By going through BASF, you receive the services of these highly qualified mediators at a great value.

## HOW MUCH DOES THE SERVICE COST?

A $250 per party administrative fee is paid to BASF. This fee covers the first hour of mediator preparation time and the first two hours of session time, but your mediation is not limited to three hours. Time beyond these three hours is paid at the mediator's normal hourly rate. To qualify for the pro-bono hours from our professional mediators, parties must file the Consent to Mediate form with BASF.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF to assist with the selection.

## WHY DO THE MEDIATORS GIVE FREE HOURS; IS THE SERVICE ONLY FOR "SMALL" MATTERS?

The mediators are professionals who have agreed to provide the free time as a service to BASF, allowing us to offer a unique mediation panel of high quality and value. Our mediators are available for any size case; we've handled everything from simple property disputes to complex business matters.

## WHY SHOULD I GO THROUGH BASF, CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

The BASF mediators are available privately but have also agreed to serve on our panel and provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the pro bono hours. Once you have filed with us, you will work directly with the mediator.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. The mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

The BASF mediators can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during court action.

## OUR CASE IS FILED IN COURT; HOW DO WE USE BASF'S MEDIATION SERVICE?

When you file the San Francisco court's stipulation to ADR, simply check the box indicating your choice as Mediation Services of BASF. Then complete BASF's Consent to Mediate form found on our website and file it with us, or call us for the form. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed the BASF Consent to Mediate form and paid the administrative fees, BASF can normally have you in touch with the mediator within a day or two. If you have a deadline, staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in dozens of areas of disputes. If you don't see the area you need in our 30+ panels found on our website and this brochure, just contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Our website provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law. For personal assistance, please call 415-982-1600.

WWW.SFBAR.ORG/MEDIATION ○ ADR@SFBAR.ORG ○ 415.982.1600

*Attorney or Party without Attorney:*
ANGELA ALIOTO, ESQ., SB# 130328
LAW OFFICES OF JOSEPH L. ALIOTO AND ANGELA ALIOTO
700 Montgomery Street
San Francisco, CA   94111

*Telephone No:* (415) 434-8700

*Attorney for: Plaintiff* Frank Allen

*For Court Use Only*

2011 JUN -2 PM 3:25

BY: _____ DEPUTY CLERK

*Ref. No. or File No.:*

*Insert name of Court, and Judicial District and Branch Court:*
SAN FRANCISCO COUNTY SUPERIOR COURT

*Plaintiff:* FRANK ALLEN

*Defendant/Cross Complainant:* RADIO SHACK CORPORATION

| PROOF OF SERVICE SUMMONS & COMPLAINT | *Hearing Date:* Fri, Oct. 21, 2011 | *Time:* 9:00AM | *Dept/Div:* 610 | *Case Number:* CGC-11-511136 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS & COMPLAINT; NOTICE TO PLAINTIFF AND NOTICE OF CASE MANAGEMENT CONFERENCE; ADR INFORMATION PACKAGE; BLANK STIPULATION FOR ADR; BLANK CASE MANAGEMENT STATEMENT; JUDICIAL MEDIATION PROGRAM SHEET; MEDIATION SERVICES BROCHURE

3. a. *Party served:*          RADIO SHACK CORPORATION
   b. *Person served:*         BECKY DE GEORGE, AUTHORIZED TO ACCEPT SERVICE; White, Female, 50 Years Old, Blonde Hair, 5 Feet 7 Inches, 170 Pounds

4. *Address where the party was served:*     CSC, LAWYERS INCORPORATING SERVICES
   2730 GATEWAY OAKS DRIVE
   SUITE 100
   SACRAMENTO, CA 95833

**BY FAX**

5. *I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Thu., May. 26, 2011 (2) at: 3:38PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: RADIO SHACK CORPORATION
   Under CCP 416.10 (corporation)

7. *Person Who Served Papers:*
   a. JEFFREY W ABEGGLEN
   b. **MERCURY INVESTIGATIONS**
      3645 GRAND AVENUE
      SUITE 207
      OAKLAND, CA 94610
   c. 510-268-9810

   Lic. No. PI 12115

   *Recoverable Cost Per CCP 1033.5(a)(4)(B)*
   d. *The Fee for Service was:* $100.00
   e. I am: (3) registered California process server
      (i) Independent Contractor
      (ii) Registration No.:    2007-63
      (iii) County:             Sacramento
      (iv) Expiration Date:     Sun, Dec. 11, 2011

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   Date: Thu, May. 26, 2011

   _____
   (JEFFREY W ABEGGLEN)

*Judicial Council Form POS-010*
*Rule 2.150.(a)&(b) Rev January 1, 2007*

PROOF OF SERVICE
SUMMONS & COMPLAINT

*mercury.193697*

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Angela Alioto, Esq. (SBN 130328)
Angela M. Veronese, Esq. (SBN 2699420
Law Offices of Mayor Joseph L. Alioto and Angela Alioto
700 Montgomery, san Francisco, CA 94111
TELEPHONE NO.: 415-434-8700   FAX NO.: 415-438-4638

ATTORNEY FOR *(Name):* Frank Allen

**F I L E D**
FOR COURT USE ONLY
Superior Court of California
County of San Francisco

MAY 2 0 2011

CLERK OF THE COURT
BY _Karen Natt_
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Frank Allen v. Radio Shack Corporation, Donna O'Campo and Does 1-100

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | C G C - 1 1 - 5 1 1 1 3 6 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[✓] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 20, 2011
Angela M. Veronese
(TYPE OR PRINT NAME)                    ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**BY FAX**

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**EXHIBIT D**

1  Tracy Thompson (SBN 88173)
       tt@millerlawgroup.com
2  Adam J. Tullman (SBN 235694)
       ajt@millerlawgroup.com
3  MILLER LAW GROUP
   A Professional Corporation
4  111 Sutter Street, Suite 700
   San Francisco, CA 94104
5  Tel. (415) 464-4300
   Fax (415) 464-4336
6
   Attorneys for Defendant
7  RADIOSHACK CORPORATION

8

9

10                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    SAN FRANCISCO COUNTY SUPERIOR COURT

12
   FRANK ALLEN,                              Case No.: CGC-11-511136
13
                     Plaintiff,              **NOTICE TO SUPERIOR COURT AND TO**
14                                           **ADVERSE PARTY OF REMOVAL OF**
                                             **ACTION TO FEDERAL COURT**
15  v.

16
   RADIO SHACK CORPORATION, DONNA
17  O'CAMPO and Does 1 through 100,

18                                           Complaint filed:  May 20, 2011
                     Defendants.
19

20

21  TO THE ABOVE-ENTITLED COURT AND TO PLAINTIFF AND HIS ATTORNEYS OF

22  RECORD:

23

24          PLEASE   TAKE   NOTICE   THAT   on   June   23,   2011,   RADIOSHACK

25  CORPORATION ("Defendant") filed in the United States District Court for the Northern

26  District of California its Notice of Removal of Action under 28 U.S.C. § 1441(b) (Diversity).

27  A copy of that Notice of Removal is attached to this Notice as **Exhibit 1**, and is served and

28  filed herewith.

                                            1
   NOTICE TO SUPERIOR COURT AND TO ADVERSE PARTY OF REMOVAL OF ACTION TO FEDERAL COURT
                              Case No.: CGC-11-511136

*(left margin, vertical text)* MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA

1      PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), the

2  filing of said Notice of Removal of Action in the United States District Court, together with

3  the filing of this Notice to the Superior Court and Adverse Party, effects the removal of this

4  action, and that this Court is directed to "proceed no further unless and until the case has

5  been remanded."  28 U.S.C. § 1446(d).

6

7  Dated:  June 20, 2011                    MILLER LAW GROUP
                                           A Professional Corporation
8

9

10                                         By:

11                                             Adam J. Tullman
                                               Attorneys for Defendant RADIOSHACK
11                                             CORPORATION

12

13

14

15  4823-2129-1785, v.  1

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE TO SUPERIOR COURT AND TO ADVERSE PARTY OF REMOVAL OF ACTION TO FEDERAL COURT
Case No.: CGC-11-511136

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
SAN FRANCISCO, CALIFORNIA